UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KRISTI WILLIAMS, *Administrator Ad Prosequendum*, individually and on behalf of the ESTATE OF ALFRED C. TOE; and CONSTANTINE TOE,<br><br>      Plaintiffs,<br><br>v.<br><br>TRENTON POLICE OFFICER SHEEHAN MILES; TRENTON POLICE DEPARTMENT; TRENTON POLICE DIRECTOR ERNEST PARREY; THE CITY OF TRENTON; JOHN and JANE DOES (1-20); and XYZ CORPS. #1-10,<br><br>      Defendants | Case No. 3:18-cv-12973-BRM-ZNQ<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendants Trenton Police Department and Trenton Police Director Ernest Parrey's Motion To Dismiss Count XI of Plaintiffs' Complaint (ECF No. 11) and Defendant Officer Sheehan Miles's ("Miles") Cross-Motion To Dismiss Count XI Of Plaintiffs' Complaint (ECF No. 16). Having reviewed the submissions filed in connection with the motions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth herein and for good cause appearing, Defendants' Motions to Dismiss are **GRANTED.**

    **I. FACTUAL BACKGROUND**

For the purposes of these Motions to Dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to the plaintiff. *See*

*Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). On August 27, 2016, Decedent-Plaintiff Alfred C. Toe ("Decedent Alfred Toe") and his brother, Plaintiff Constantine Toe ("Constantine Toe") (together with Decedent Alfred Toe and Kristi Williams, "Plaintiffs"), attended a repass memorial at the property located on Roosevelt Avenue in Trenton, New Jersey. (Compl. (ECF No. 1) ¶¶ 22, 24.) Miles was also in attendance at the event. (*Id*. ¶ 27.) Alcohol was being served, and Miles was allegedly consuming alcohol and possibly smoking marijuana during the course of this event. (*Id*. ¶¶ 25, 27.) Decedent Alfred Toe became embroiled in an altercation with another attendee and proceeded to retrieve his brother's gun, which was located within his brother's car. (*Id*. ¶¶ 28, 29.) Constantine Toe saw his brother returning with the gun and, during an ensuing confrontation, the weapon accidently discharged, with a bullet striking Constantine Toe's hand (*Id*. ¶ 30.) It was at this time that Miles, in plain clothes and with his weapon drawn, approached the scene and ultimately arrested Constantine Toe. (*Id.* ¶¶ 32-34.)

Miles, while kneeling on Constantine Toe, took possession of Constantine Toe's weapon and kept his own weapon drawn. (Compl. (ECF No. 1) ¶¶ 39-41.) Decedent Alfred Toe called out for Miles to "get of my brother"; it was unknown to Decedent Alfred Toe that Miles was a Trenton Police Department Officer as he had not identified himself. (*Id.* ¶¶ 43-46.) Miles told Decedent Alfred Toe to "stand back" and, though no contact or struggle ensued, shot the unarmed Decedent Alfred Toe in the chest at a distance of at least 5 feet. (*Id. *¶¶ 47-51.)

Constantine Toe, still handcuffed and laying on the ground, pleaded with Miles to render aid and watched as Decedent Alfred Toe bled out in front of him. (*Id*. ¶¶ 52-53.) Plaintiffs allege that after shooting Decedent Alfred Toe, Miles did not immediately secure medical attention and began to panic. (*Id.* ¶¶ 55-56.) They further allege that other "[Trenton Police Department]

Officers, representatives, agents and Supervisory level employees conspired to cover up the shooting." (*Id.* ¶ 58.)

## II. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconducted alleged." *Id*. This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement." *Id*. (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be

3

pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged –but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P 8(a)(2)). However, courts are "not compelled at accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

### III. DECISION

Though filed separately, Defendants' Motions to Dismiss Count XI of Plaintiffs' Complaint both argue that Plaintiffs failed to provide details that would give rise to a claim under the New Jersey Tort Claims Act ("TCA"). Therefore, the Court considers them together.

The issue before this Court is not whether Plaintiffs' TCA notice was filed in a timely matter, but whether that notice contained the requisite elements needed to notify Defendants of Plaintiffs' *Portee*[1] claim. The case law surrounding this particular question is sparse. Defendants further argue that if this Court finds Plaintiffs' TCA notice deficient, the claim must be dismissed with prejudice as the time to amend the notice has "long expired" the two-year threshold. (ECF No. 11.)

   A. **Consideration of Documents Outside the Complaint**

---

[1] *Portee v. Jafee*, 642 A.2d 372, 417 (N.J. 1980).

The Court begins by addressing whether the documents submitted by Defendants may be considered without converting the motion to dismiss to a summary judgment motion. "Generally, when ruling on a motion to dismiss, a court may not consider matters outside the pleadings." *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 291-92 (D.N.J. 2009). A court, however, may consider documents that are "integral to or explicitly relied upon in the complaint" without converting a motion to dismiss into a motion for summary judgment. *Id.*; *see also Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 255 n.5 (3d Cir. 2004) ("A document integral to or explicitly relied on in the complaint 'may be considered without converting the motion [to dismiss] into one for summary judgment.'") (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

The documents attached to Defendants' Motions to Dismiss (*see, e.g.* ECF No. 11-2 (tort claims notice)) are integral Plaintiffs' Complaint. *D.B. ex rel. Steinnabel v. Div. of Youth & Family Servs.*, No. 12-1559 FLW, 2012 WL 5406079, at *2 n.3 (D.N.J. Nov. 5, 2012) (considering a tort claim notice on a motion to dismiss where the authenticity of the document has not been challenged); *Thomasian v. N.J. Inst. of Tech.*, 2009 WL 260791, at *1-2 n.3, 2009 U.S. Dist. LEXIS 7900, at *2-9 n.3 (D.N.J. Feb. 3, 2009) (recognizing requirement of tort claim notice as "integral" to plaintiff's complaint, properly considered on motion to dismiss without converting motion to one for summary judgment). Therefore, the Court need not convert the motion to one for summary judgment.

**B. Defendants' Motions to Dismiss Plaintiffs' State Law Tort Claims**

Defendants have moved to dismiss Plaintiffs' state law tort claims, citing Plaintiffs' failure to satisfy the requirements of the TCA, N.J. Stat. Ann. § 59:8-3, which states: "No action shall be brought against a public entity or public employee under this act unless the claim upon which it is

based shall have been presented in accordance with the procedure set forth in this chapter." Under the TCA, "parties suing public entities must comply with strict requirements for notifying and suing those entities." *Macklin v. Cty. of Camden*, No. CV 15-7641 (JBS/AMD), 2016 WL 3545520, at *2 (D.N.J. June 28, 2016) (citing *Feinberg v. State, D.E.P.*, 644 A.2d 593, 597 (N.J. 1994)).

The TCA bars suit against a government employee or agency unless the party seeking to bring the action has presented those claims "in accordance with the procedure set forth in this chapter." N.J. Stat. Ann. § 59:8-3. A claim against the state must be filed either with (1) the Attorney General or (2) the department or agency involved in the alleged wrongful act or omission, here, presumably, the Trenton Police Department. *See* N.J. Stat. Ann. § 59:8-7.

The claim notice must include, among other things: (1) the name and address of the claimant; (2) the address for sending communication about the claim; (3) the "date, place, and other circumstances of the occurrence" which gave rise to the claim; (4) a "general description of the injury, damage, or loss incurred as far as it may be known at the time"; (5) the name of the public entity, employee, or employees causing the injury; and (6) the amount claimed as of the date of presentation of the claim, "including the estimated amount of any prospective injury, damage or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed." N.J. Stat. Ann. § 59:8-4.

The purposes of the notice to the public entity defendant are to: (1) allow the public entity at least six months for administrative review with the opportunity to settle meritorious claims prior to the bringing of suit; (2) provide the public entity with the prompt notification of a claim in order to adequately investigate the facts and prepare a defense; (3) afford the public entity a chance to correct the conditions or practices which gave rise to the claim; and (4) inform the [public entity]

in advance as to the indebtedness or liability that it may be expected to meet. *Beauchamp v. Amedio*, 751 A.2d 1047, 1053 (N.J. 2000) (internal quotation marks and citations omitted).

Constantine Toe filed his own individualized, timely notice with the City of Trenton. (ECF No. 11-2 at 19.) Defendants do not dispute this fact, but instead assert that Plaintiffs' notice "lack[ed] the 'general description of the injury' required to place the City Defendants on notice that a bystander claim under *Portee* may be advanced." (ECF No. 11 at 7.) Put another way, Defendants' motion is not predicated on the lack of an individualized notice filed on behalf of Constantine Toe, but rather the *substance* of the notice.

### 1. TCA Notice Requirement

Defendants' motion relies almost exclusively on the decision in *Alberts v. Gaeckler*, 144 A.3d 80 (N.J. Super. Ct. Law. Div. 2014). In that case, the plaintiff suffered an injury when she fell from her bicycle on a path owned by the defendant, County of Atlantic. *Id.* at 83. Plaintiff sought compensation for her injuries, timely filed her notice of claim pursuant to the TCA, and timely filed a subsequent complaint. *Id.* The tort claim filed by the plaintiff clearly listed her husband as a witness to the accident; her husband later sought loss of consortium as part of a *per quod* claim in the pleading filed by plaintiff. *Id.* at 84. According to the court, the complaint contained no allegations that "could be interpreted as averring a claim for damages based upon an indirect claim for negligent infliction of emotion distress or *a bystander liability claim*." *Id.* (emphasis added). The court viewed the contents of the tort claim notice ("TCN") and found that it did not include "any suggestion that a *Portee* claim [was] being asserted." *Id*. at 87.

Plaintiffs attempt to distinguish *Alberts* but misinterpreted the *Alberts* ruling. Plaintiffs assert the decision made by the *Alberts* court was predicated on whether or not an actual filing of an individual notice took place. (ECF No. 14 at 7.) That is not the case. Plaintiffs falsely believe

7

the court determined the defendant in *Alberts* was not notified because, as they themselves quote, there was nothing "that would alert the defendant that (husband) was making **his own claim**." (ECF No. 14 at 8 (quoting *Alberts*, 144 A.3d at 87).) But Plaintiffs cut the court's quote short; the full quote states: "that would alert the defendant to the fact that Randy [husband] was making his own claim *for indirect negligent infliction of emotional distress*." *Alberts*, 144 A.3d at 87 (emphasis added). The issue in *Alberts* was not whether the defendant was put on notice that some semblance of litigation would be on the horizon, but whether the defendant knew that plaintiff was seeking recourse under a specific, rather than general theory of law. The *Alberts* court made it clear in their ruling that "a TCN specifically asserting bystander liability is required before plaintiff is authorized to file suit seeking recovery based upon a bystander liability claim." *Id*. at 88.

Plaintiffs argue Defendants, unlike in *Alberts*, were put on notice and "alerted to the fact that Constantine [Toe] was making his own personal injuries claim." (ECF No. 14 at 8.) While it may be true that Defendants were put on notice that Plaintiffs were attempting to proceed on a personal injury claim, the TCN must have specifically asserted a claim for bystander liability in order for him to be able to recover.

In his individualized TCN, Constantine Toe used the term "wrongful death" to describe both Section G (explanation for basis of claims) and Section 4(a) (description of the claimed injuries/damages). (ECF No. 11-2.) He checked the box labeled "personal injury" in Section 4(a), yet wrote "death" as the personal injury attained in Section 4(b). (*Id*.) There is no mention within his entire TCN that he is attempting to submit a claim under the theory of bystander liability. The information contained within the TCN is more akin to a wrongful death suit than a *Portee* bystander liability claim. Furthermore, Constantine Toe's TCN is nearly identical to the notices filed by those plaintiffs who actually are seeking remedy under a wrongful death claim.

This Court agrees with Defendants that Plaintiffs have "failed to identify and allude to both the bystander liability claim itself, and the separate and distinct injuries which must be alleged" in order for Plaintiffs to pursue a bystander claim. (ECF No. 11 at 12.) Plaintiff's TCN does mention that he is a witness to the events in question. (ECF No. 11-2.) Yet, the court in *Alberts* held that it is unreasonable for a public entity to assume that "every time it receives a TCN in which a spouse is named as a potential witness that the spouse may be making a claim for bystander liability." *Alberts*, 144 A.3d at 87. If any witness listed on the TCN were immediately assumed to be seeking bystander liability, then there would no need to have a section devoted for a claim for damages. Though the *Alberts* case dealt with a spousal relationship, the familial relationship between brothers is comparable under *Portee v. Jafee*, 642 A.2d 372, 417 (N.J. 1980).

Plaintiffs further argue it was, or reasonably should have been, clear that the tort claim was based on Constantine Toe's status as an eyewitness to the events. There are several issues with this theory. First, there is nowhere within the TCN that refers to Constantine Toe as an "eyewitness" -- he is merely referred to as a "witness." (ECF No. 11-2.) Plaintiffs argue that the police officers on the scene were "well aware of Constantine's presence during his brother's death" and therefore there was no confusion or surprise that he was attempting to sue under a theory of bystander liability. (ECF No. 14 at 9-10.) While that may be true, it does not excuse Plaintiffs from their obligation to give Defendants proper notice of their claim, nor does it mean does Defendants had notice of the claim. Not every eyewitness to an event will file a TCN seeking to recover on a theory of bystander liability, especially considering that this particular TCN contained identical language to claims sought under a theory of wrongful death.

Plaintiff is correct that N.J. Stat. Ann. § 59:8-4(d) does not require plaintiffs to provide the specific legal theories that they intend to use. This court, however, believes that Plaintiff's TCN

9

did not meet the threshold of a "general description of the injury, damage, or loss incurred as far as it may be known at the time" and as a result should be construed as deficient.

### 2. Doctrine of Substantial Compliance

Plaintiffs contend that even if this court were to find deficiencies in Constantine Toe's TCN, the doctrine of substantial compliance should bar the Court from dismissing his claims. (ECF No. 14 at 12.) The New Jersey Superior Court codified the doctrine of substantial compliance only a few years after the enactment of the New Jersey Tort Claims Act. In *Dambro v. Union Cty. Park Comm.*, 327 A.2d 466, 469-70 (N.J. Super. Ct. Law Div. 1974), the court stated:

> "The doctrine of substantial compliance has frequently been invoked to validate a claim in fact filed under the claims statute, although incomplete or defective or presented to the wrong agency, where claimant has made a bona fide attempt to comply with the statutory requirements."

*Id*. at 469-70 (quoting *Stromberg, Inc. v. Los Angeles Cty Flood Control Dist.*, 270 Cal. App.2d 759, 76 Cal. Rptr. 183 (1969); *D.D. v. Univ. of Med. & Dentistry of New Jersey*, 61 A.3d 906, 923 (N.J. 2013) (substantial compliance "has been limited carefully to those situations in which the notice, although timely and in writing, had technical deficiencies that did not deprive the public entity of the effective notice contemplated by the statute.")). In *Dambro*, N.J. Stat. Ann. § 59:8-4(d)—a "general description of the injury, damage, or loss incurred as far as it may be known at the time"—was satisfied because the police department's "own records [indicated] that plaintiff suffered a broken neck, and therefore had at least constructive knowledge of the nature of the injury." *Id*. at 470. This constructive knowledge meant that plaintiff, despite the deficiency in their TCN, had successfully described their injury. *Id*.

Plaintiff believes that the facts here mirror those of *Dambro*. Plaintiff equates the police being able to properly identify Constantine as an "eyewitness" with their ability to ascertain the

impact that this event caused him. (ECF No. 14 at 9) (arguing that "even the most cursory investigation into the events . . . would have revealed Constantine's presence as an eyewitness and the impact upon him of watching his brother 'bleed' out in front of him.") The circumstances here do not parallel those of *Dambro*. In *Dambro*, the defendant had, contained within police reports, a clear description of the *injuries* that formed the basis of the plaintiff's claim. *Dambro* at 327 A.2d at 467-68.

There is no indication that the Defendants had any independent records of Constantine Toe's *injuries*, which resulted from the event in question and are specifically related to the alleged bystander claim being put forward by Plaintiffs. It can be argued that a rudimentary investigation done by the Defendants would have revealed that Constantine Toe was present at the shooting, that he had a familial connection with the deceased, and the he had submitted a TCN. However, those factors weaved together do not present a scenario in which Defendants were given sufficient notice that Constantine Toe would be claiming bystander injuries. That conclusion is too far attenuated from the facts presented here. Therefore, as the missing elements of the TCN do not reflect "minor defects," the doctrine of substantial compliance cannot be utilized by the Plaintiff to prevent this court from granting Defendants Motion to Dismiss.

### IV. CONCLUSION

For the reasons set forth above, Defendants' Motions to Dismiss are **GRANTED**. An appropriate order follows.

**Date: January 31, 2020**  /s/ *Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**