UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

KRISTI WILLIAMS, *Administrator Ad Prosequendum, individually and on behalf of the* ESTATE *of* ALFRED C. TOE, and CONSTANTINE TOE,

Plaintiffs,

v.

SHEEHAN MILES, et al.,

Defendants.

Civil Action No. 18-12973 (BRM) (ZNQ)

**MEMORANDUM OPINION**

This matter comes before the Court upon a series of letters detailing a discovery dispute regarding production of sensitive documents, initially briefed by Defendant Trenton Police Officer Sheehan Miles ("Officer Miles" or "Defendant"). (Def.'s Letter, ECF No. 33.) Plaintiffs opposed (Pls.' Opp'n, ECF No. 34-1), and Defendant replied (Def.'s Reply, ECF No. 36). Defendant submitted another letter, clarifying errors in his initial position that he had learned subsequent to initial briefing. (Def.'s Second Letter, ECF No. 37.) The Court has carefully considered the arguments and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth herein, Plaintiffs' request for discovery of Defendant's psychological treatment records is denied.

This is an action in which Plaintiffs Kristi Williams, Administrator Ad Prosequendum, individually and on behalf of the Estate of Alfred C. Toe, and Constantine Toe (collectively, "Plaintiffs") allege Officer Miles subjected the decedent, Alfred C. Toe, to excessive and unreasonable force, specifically, lethal force, in an altercation which took place on August 27, 2016. (Compl. ¶¶ 2, 20, ECF No. 1.) Plaintiffs seek to recover based on the alleged negligence of

Officer Miles, Trenton Police Department ("TPD"), and the City of Trenton ("Trenton"), (*id.* ¶¶ 62-80); recklessness, willful, or wanton misconduct, (*id.* ¶¶ 81-85); wrongful death, (*id.* ¶¶ 86-95); offensive physical contact, (*id.* ¶¶ 129-32); intentional infliction of emotional distress, (*id.* ¶¶ 133-37); loss of consortium, (*id.* ¶¶ 138-41); *Portee* claims of Constantine Toe, (*id.* ¶¶ 142-47); social host and premises liability, (*id.* ¶¶ 157-74); and violations of the United States Constitution; the Civil Rights Act, 42 U.S.C. section 1983; the New Jersey Constitution, and the New Jersey Civil Rights Act, (*id.* ¶¶ 96-128, 148-56).

## I.     PARTIES' POSITIONS

On March 30, 2020, the Court conducted a telephone status conference with the parties, during which time the Court learned that Officer Miles objected to the production of his psychological treatment records as protected by the psychologist-patient privilege, initially outlined by the United States Supreme Court in *Jaffe v. Redman*, 518 U.S. 1 (1996). (Def.'s Letter 1.) In support of his position, Officer Miles relies on *Caver v. Trenton*, 192 F.R.D. 154 (D.N.J. 2000). Specifically, he argues that here, as in *Caver*, "Trenton's procedures relating to fitness due to the psychological evaluations were designed to effect absolute confidentiality." (Def.'s Letter 3.) He argues that when a department decides to have an officer examined, the officer is referred to an outside healthcare provider, who in turn will refer him to an independent medical professional for psychiatric evaluation. (*Id.*) He states that "any reports of the independent health professional containing specific diagnoses, clinical impressions, or the like were retained by [the outside healthcare provider], and not disclosed to City of Trenton personnel." (*Id.* at 3-4.) Officer Miles contends that the outside provider only reports conclusions to Trenton personnel; that "[t]he City did not receive, nor have access to, the underlying psychological report or records"; and that this policy is both the current controlling policy, and the policy in *Caver*. (*Id.*) Officer Miles highlights

that here, as in *Caver*, he "was specifically told by the individuals he spoke with at the Institute at issue the psychological records and reports were strictly confidential and would not be disclosed to the police department, and that the city would only be given the general conclusion concerning psychological fitness," and that the outside provider "did not disclose any confidential information to the City of Trenton, but merely gave a 'pass' or 'fail' recommendation of fitness for duty to the police department." (*Id.* at 4-5.) He contends "he had the expectation the psychological records and reports would be kept confidential." (*Id.* at 4.)

In response, Plaintiffs distinguish *Caver*, arguing that "the Honorable John J. Hughes, U.S.M.J., made sure to conduct an *in camera* inspection of the pertinent psychological records" before ruling on their production, and that Judge Hughes found the records unrelated to the plaintiffs' claims of discrimination. (Pls.' Opp'n 4.) Plaintiffs further argue that "[t]he Court expressly noted that had the issue been one of excessive force, then, as to one Officer, it could very well have been a different result (i.e., disclosure would have been warranted)." (*Id.* (citing *Caver*, 192 F.R.D. at 164).) Curiously, Plaintiffs' papers directly contradict Officer Miles' contention that he expected all but the pass-fail results of the evaluation to remain confidential per TPD policy. (*Id.* at 7.) Plaintiffs state: "these are likely not at all treatment records . . . Defendant Officer Miles was sent to the Institute for Forensic Psychology for an evaluation at the Department's request, with an expectation that same would be disclosed and shared with the TPD Management and the City Administration[.]" (*Id.*) Plaintiffs aver that "Defendant Officer Miles has a long history of being aggressive, dishonest, incompetent, and at times, alleged to have been engaging in criminal activities himself, despite being an officer of the law—all of which TPD was clearly aware of." (*Id.* at 5.) They assert that Officer Miles' "mental state and ability as to perception and observation are most certainly relevant since there are major credibility issues in this case and the issue of the

3

City's notice of these problems . . . especially to Plaintiffs' *Monell*[1] claims." (*Id.*) In sum, "Plaintiffs contend that the records sought are not privileged, are highly relevant, and may lead to the discovery of admissible evidence concerning what happened and why." (*Id.* at 9.)

Officer Miles replies that the policy arguments in *Caver* remain, and that "[i]f these types of records are permitted to be produced in cases such as that now before the [C]ourt, this will undoubtedly create a chilling effect on officers' willingness to speak freely to the mental health professional discussing their fitness to return to duty, which, in turn, will adversely affect the public good." (Def.'s Reply 7.) Regarding Plaintiffs' *Monell* claims, Officer Miles maintains that they are regularly "bifurcated for both discovery and trial purposes as they bear no relevance to a determination of whether the officer in a particular situation violated the plaintiff's Civil Rights." (*Id.* at 8-9 (citation omitted).) He suggested that the Court review the records in question *in camera* before making a ruling. (*Id.* at 9.)

After briefing, Officer Miles wrote a follow-up letter, "to correct some inaccuracies in [his] submissions that have come to light as [he] has now come into possession of some of the records that [P]laintiff[s'] counsel seeks." (Def.'s Second Letter 1.) He asserts that he "has found out The Institute for Forensic Psychology issued three reports with respect [to Officer Miles] dated[:] 05/04/2009, 08/30/2010, and 09/08/[20]16." (*Id.*) The two reports that he obtained are the reports submitted for the Court's *in camera* review. (*Id.*) Officer Miles states that he previously represented that "he believed that the 'Fitness for Duty' reports simply indicated that [he] was 'Fit for Duty', as . . . he was returned to duty after the two incidents involved. [His] review of the

---

[1] In *Monell v. Department of Social Services*, the Supreme Court held that local governing bodies can be held liable under section 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. 658, 690 (1978).

documents indicate this is not, in fact, correct." (*Id.* at 1-2.) The report involving domestic violence includes "a detailed recitation of the facts related to that incident," and "the results of various psychological tests conducted with respect to [Officer Miles] at or about that time," which is "contrary to [his] understanding that all discussions with the examiner were to be confidential and the report provided to the Police Department would only reflect whether he was 'fit for duty'." (*Id.* at 2.) He argues that "[i]rrespective of the information that was provided to the Police Department, [he] was under the impression that his discussions with the psychologist in question would remain confidential." (*Id.*)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26 governs the scope of discovery. Rule 26(b)(1) provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Federal Rule of Evidence 501 governs privilege in matters in which the Court exerts federal question jurisdiction. *See Pearson v. Miller*, 211 F.3d 57, 61 (3d Cir. 2000) ("[D]iscovery disputes in federal court are governed by federal law, especially the Federal Rules of Civil Procedure and the Federal Rules of Evidence."). Federal Rule of Evidence 501 states:

> The common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege unless any of the following provides otherwise: the United States Constitution; a federal statute; or rules prescribed by the Supreme Court. But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

5

"[W]hen there are federal law claims in a case also presenting state law claims, the federal rule favoring admissibility, rather than any state law privilege, is the controlling rule." *Wm. T. Thompson Co. v. Gen. Nutrition Corp.*, 671 F.2d 100, 104 (3d Cir. 1982). "Accordingly, for the resolution of the present discovery dispute, which concerns material relevant to both federal and state law claims, [Federal Rule of Evidence] 501 directs us to apply federal privilege law." *Pearson*, 211 F.3d at 66. "The general test to be applied in assessing privilege candidates is whether such a privilege 'promotes sufficiently important interests to outweigh the need for probative evidence.'" *Pearson*, 211 F.3d at 67 (quoting *Trammel v. United States*, 445 U.S. 40, 47 (1980)). "[Federal Rule of Evidence] 501 should be understood as reflecting the view that the recognition of a privilege based on a confidential relationship . . . should be determined on a case-by-case basis." *Jaffee v. Redmond*, 518 U.S. 1, 8 (1996) (internal quotation marks and citation omitted) (outlining the psychotherapist-patient privilege).

The Federal Rules of Civil Procedure further contemplate production of potentially privileged material, stating:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5). Similarly, Local Civil Rule 34, governing production of documents, directs:

> Where a claim of privilege is asserted in responding or objecting to any discovery requested in requests for documents, and information is not provided on the basis of such assertion, the party asserting the privilege shall in the response or objection identify the nature of the privilege (including work product) which is being claimed and if the privilege is being asserted in connection with a claim or defense

6

> governed by state law, set forth the state rule being invoked. When any privilege is claimed, the party asserting it shall indicate, as to the information requested, whether any such documents exist.

The Supreme Court of the United States has specifically carved out a privilege for communications between a patient and his or her psychotherapist. *See Jaffee*, 518 U.S. at 15. "[C]onfidential communications between a licensed psychotherapist and [his or] her patients in the course of diagnosis or treatment are protected from compelled disclosure under 501 of the Federal Rules of Evidence." *Id.* The District Court for the District of New Jersey has recognized that "*Jaffee* is not limited to situations in which people voluntarily consult a mental health professional." *Caver*, 192 F.R.D. at 162. "What is critical is that [the defendant] was examined by a psychologist for the purpose of diagnosing whether he was suffering from some mental illness or emotional disorder that would render him to be unfit as a police officer." *Id.*

### III. DISCUSSION

The Court denies the production of these records after examination *in camera*, as containing no additional relevant material. The Court has determined that these records have little to no probative value, which is substantially outweighed by potential prejudice to Officer Miles and the chilling effect on the evaluative system of police officers who may be suffering from a psychological condition. This is especially true of the report pertaining to the domestic violence incident, which took place nearly ten years ago. Plaintiffs are aware of the events that transpired leading to Officer Miles' evaluations, and upon reviewing these records *in camera*, the Court determines there is no outstanding discovery that could be gleaned from accessing them. Additionally, significant public policy concerns further support nondisclosure of these records under the circumstances of this case.

Though *Caver* is distinguishable from the instant matter in that *Caver* centered around potential discrimination, and this action surrounds the use of alleged excessive force, the Court finds that production of these documents to Plaintiffs would serve to disincentivize an officer from revealing sensitive information to a psychotherapist for fear that it might later become the subject of litigation. As the *Caver* Court explained, "[p]olice officers are required to undergo psychological evaluations in order to determine whether they are mentally fit to be police officers. This testing is performed not only to benefit the officer's well-being, but more importantly, to ensure the safety of the community by protecting its citizens from police officers whose mental instability poses a risk to public safety." *Caver*, 192 F.R.D. at 163.

As in *Caver*, despite the disclosure to TPD, Officer Miles believed that these documents would be kept confidential, and that TPD would only receive a pass-fail recommendation for whether he could return to work. (Def.'s Letter 4.) Officer Miles asserts that he "was specifically told by the individuals he spoke with at the Institute [for Forensic Psychology] that the psychological records and reports were strictly confidential and would not be disclosed to the police department, and that the City would only be given the general conclusion concerning psychological fitness." (*Id.*) The records are clearly marked with the heading "Privileged and Confidential Psychological Report," in all capital, bold, and underlined letters. Though any claimed privilege appears to be waived due to the actual disclosure of the reports to Defendant Officer Miles' employer, TPD, the documents are clearly confidential, and TPD stands in a different position than that of a disinterested third-party. TPD has a strong policy interest in maintaining the confidentiality of its evaluative process, and permitting its officers the opportunity to obtain unfettered assistance through free communication with healthcare providers, who in turn

8

ensure officers are fit for duty. This is not only in the best interest of TPD, but in the best interest of the public its officers serve.

Though Plaintiffs argue that, because General Order 74-2 requires that "officers must be cleared by a 'city contracted medical provider,' . . . Defendant cannot and should not argue privilege here, as he should be aware of what the Rules and Regulations of his employer are[,]" and the Court does discern language indicating that the reports would be produced to the Police Director,[2] the Court finds that this is insufficient to overcome the significant policy interests combined with Officer Miles' understanding of disclosure at the time of evaluation. The Court's review of TPD's general Rules and Regulations did not uncover any further specific policy relating to the issue of disclosure. The Court finds that even if Officer Miles would have been put on notice by General Order 74-2, he reasonably believed, after such directly conflicting communication, that his evaluation by an independent psychotherapist would remain confidential and would not be disclosed.

Finally, the Court notes that this decision should not be construed as prohibitive to disclosure of records in every case; as stated by the Supreme Court, analyses relating to a confidential relationship must be examined on a case-specific basis. *See Jaffee*, 518 U.S. at 8.

---

[2] TPD's sick leave policy reads: "Bureau Commanders or their designees shall be responsible for tracking the sick and [injured on duty] status of all personnel in their command. These duties include . . . [r]eferr[ing] Department personnel for evaluation to the appropriate consulting physician or City Contracted Medical Provider and obtain[ing] evaluation reports from physicians to whom the employee was referred. Evaluation reports shall be forwarded with recommendations to the Police Director." (TPD Sick Leave Policy 74-2 III.6, Gen. Order No. 74-2, am. Sept. 29, 2015.)

## IV.   CONCLUSION

For the reasons set forth above, Plaintiffs' request to access Defendant Officer Miles' psychological records submitted for *in camera* review is denied. An order consistent with this Memorandum Opinion will be entered.


**Signed:** June 30, 2020

ZAHID N. QURAISHI
UNITED STATES MAGISTRATE JUDGE